## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
TONYA JEAN WEIR               :     Civ. No. 3:18CV00212(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :     December 3, 2018
ACTING COMMISSIONER, SOCIAL   :
SECURITY ADMINISTRATION       :
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Tonya Jean Weir ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative to remand for further proceedings. [Doc. #23]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #27].

For the reasons set forth below, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #27**] is **GRANTED**, and plaintiff's Motion for Order Reversing the Decision

of the Commissioner and/or Remanding the Matter for Further

Proceedings [**Doc. #23**] is **DENIED**.

I.    <u>**PROCEDURAL HISTORY**</u>[1]

Plaintiff filed an application for DIB on May 22, 2015,

alleging disability beginning January 7, 2015. <u>See</u> Certified

Transcript of the Administrative Record, Doc. #14-1, compiled on

April 6, 2018, (hereinafter "Tr.") at 179-82. Plaintiff's

application for DIB was denied initially on August 27, 2015, <u>see</u>

Tr. 120-23, and upon reconsideration on January 26, 2016, <u>see</u>

Tr. 128-35.

Following the denial of plaintiff's DIB application, on

November 9, 2016, plaintiff, represented by Attorney Richard

Grabow, appeared and testified by videoconference at a hearing

before Administrative Law Judge ("ALJ") Jason Mastrangelo. <u>See</u>

Tr. 59-90. Vocational Expert ("VE") Kenneth R. Smith also

testified at the hearing. <u>See</u> Tr. 84-90; <u>see also</u> Tr. 264. On

January 30, 2017, the ALJ issued an unfavorable decision. <u>See</u>

Tr. 16-40. On December 8, 2017, the Appeals Council denied

plaintiff's request for review, thereby making the ALJ's

decision the final decision of the Commissioner. <u>See</u> Tr. 1-6.

The case is now ripe for review under 42 U.S.C. §405(g).

---

[1] On October 8, 2018, the parties filed a Stipulation of Facts.
<u>See</u> Doc. #26.

Plaintiff timely filed this action for review. <u>See</u> Doc. #1. She now moves to reverse the Commissioner's decision, or in the alternative, to remand for further proceedings. [Doc. #23]. On appeal, plaintiff argues:

1. The ALJ erred at step two of the sequential evaluation;

2. The ALJ erred at step three of the sequential evaluation;

3. The ALJ failed to properly weigh the medical opinion evidence; and

4. The ALJ failed to account for certain limitations in the Residual Functional Capacity ("RFC") determination.[2]

<u>See generally</u> Doc. #23-1. As set forth below, the Court finds that ALJ's decision is supported by substantial evidence of record and there is no reversible error.

## II.  <u>**STANDARD OF REVIEW**</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is

---

[2] The Court has reordered the sequence in which the arguments appear in plaintiff's brief.

more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S.
389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305
U.S. 197, 229 (1938)). The reviewing court's responsibility is
to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u>
<u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation
omitted).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to
apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d
33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d
Cir. 1999))). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." <u>Johnson v. Bowen</u>,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]

to decide whether the determination is supported by substantial evidence." Ferrari v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507

(2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>."** <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citations omitted)

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." <u>Smith v. Comm'r</u>, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" <u>Rodriguez v. Colvin</u>, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); <u>White v. Comm'r</u>, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as

age, education, and work experience; the Secretary
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful
activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given [her] residual functional capacity." Gonzalez ex rel.

Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243

(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155

(Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.

2009) (per curiam)). The RFC is what a person is still capable

of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV. **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that since the alleged onset date of January 7, 2015, through the date of his decision, plaintiff was not disabled under the Act. See Tr. 34. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 7, 2015. See Tr. 21. At step two, the ALJ found that plaintiff had the severe impairments of "cervical degenerative disc disease and a left shoulder separation[.]" Id. The ALJ found plaintiff also suffered from the following non-severe impairments: migraines; back pain; carpal tunnel syndrome; left ankle pain; right knee

~ 9 ~

meniscus tear; affective disorder; and substance addiction. See
Tr. 22-25. Regarding plaintiff's substance addiction, the ALJ
found that substance abuse was not material to a finding of
disability. See Tr. 27.

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of any of the listed impairments in 20 C.F.R. Pt.
404, Subpt. P, App. 1. See Tr. 27. The ALJ specifically
considered "medical Listing 1.00" and determined that plaintiff
"has not met the clinical requirements of these listings or any
other listing contained in Appendix 1 to Subpart P of Social
Security Regulations No. 4." Id.

Before moving on to step four, the ALJ found plaintiff
had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> in that she can lift and/or carry 20 pounds occasionally
> and 10 pounds frequently and can sit for 6 hours and
> stand and/or walk for 6 hours in an 8-hour workday.
> Further the claimant can occasionally climb ramps,
> stairs, ladders, ropes, and scaffolds and can
> occasionally reach overhead bilaterally.

Tr. 28. At step four, the ALJ concluded that plaintiff was
unable to perform her past relevant work as a "warehouse
worker/shelf stocker (store laborer) (unskilled, medium
exertion)." Tr. 33. At step five, and after considering
plaintiff's age, education, work experience and RFC, as well as
the testimony of the VE, the ALJ found that other jobs existed

in significant numbers in the national economy that plaintiff could perform. <u>See</u> Tr. 33-34.

## V.  **DISCUSSION**

Plaintiff raises several arguments in support of reversal or remand. <u>See generally</u> Doc. #23-1. The Court addresses each in turn.[3]

### A.   Step Two

Plaintiff asserts that the ALJ erred at step two because he "did not find a severe impairment to the hands/wrist." Doc. #23-1 at 9. Defendant responds that substantial evidence supports the ALJ's step two findings, and that even if the ALJ did err at step two, any such error would be harmless. <u>See</u> Doc. #27-1 at 5.

#### *1.  Substantial Evidence Analysis*

At step two, the ALJ is required to determine the severity of plaintiff's impairments. <u>See</u> 20 C.F.R. §404.1520(a)(4)(ii); <u>see also</u> <u>id.</u> at (c). At this step, plaintiff carries the burden of establishing that she is disabled, and must provide the evidence necessary to make determinations as to her disability.

---

[3] The majority of the evidence pre-dates plaintiff's alleged onset date of January 7, 2015. Nevertheless, the Regulations provide that all evidence in a claimant's case record will be considered when making a determination as to whether a claimant is disabled. <u>See</u> 20 C.F.R. §404.1520(a)(3). In that regard, the Regulations provide that before making "a determination that you are not disabled, [the SSA] will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which you file your application[.]" 20 C.F.R. §404.1512(d).

See 20 C.F.R. §404.1512(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" if it constitutes only a slight abnormality having a minimal effect on an individual's ability to perform basic work activities. See id.

Here, the ALJ specifically considered plaintiff's "other conditions[,]" including her "constant pain and numbness in the hands from carpal tunnel syndrome (CTS) with surgery on the right hand" at step two of the sequential evaluation. Tr. 22. After summarizing the medical evidence of record concerning plaintiff's alleged impairments as to her hands and wrists, see Tr. 22-24, the ALJ concluded: "The record fails to establish that these conditions impose more than a minimal impairment on the claimant's ability to engage in basic work-related activities for a period of at least 12 continuous months. Therefore, these are not severe impairments." Tr. 25. That determination is supported by substantial evidence of record.

Notably, the majority of the evidence concerning plaintiff's alleged hand and wrist impairments relates to the period before plaintiff's alleged onset date, at a time when plaintiff was still working a medium exertion job. Compare Tr. 370 (November 28, 2011, medical record reflecting plaintiff's

"mild left sided CTS[]"), Tr. 627 (November 28, 2011, Electromyography Report reflecting diagnosis of left wrist carpal tunnel syndrome), Tr. 712 (June 6, 2013, diagnosis of right wrist tendonitis), Tr. 932 (May 7, 2013, medical record: "By report, moderate to severe neuropathy at wrist/carpal tunnel syndrome, worse on left."), <u>with</u> Tr. 220 (Work History Report reflecting that plaintiff worked at a warehouse from September 2006 through January 2015), Tr. 756 (March 28, 2013, medical record reporting that plaintiff was then working), Tr. 935 (April 1, 2013, medical record reporting plaintiff's concerns about her carpal tunnel and that she "has a vigorous job"). These records support an inference that plaintiff's alleged hand and wrist impairments, including her carpal tunnel, did not significantly limit plaintiff's ability to engage in basic work activities.

Plaintiff takes issue with the ALJ's observation that "while the (plaintiff) told shoreline neurology that recent testing revealed severe left and mild to moderate right CTS, there is no documentation of this." Doc. #23-1 at 9 (citing Tr. 24). Plaintiff asserts that statement is "incorrect" and that the reported test results appear in a medical record authored by Dr. Bash. <u>Id.</u> Plaintiff's argument on this point is confused. Indeed, Dr. Bash's May 7, 2013, medical record indicates: "She had an EMG with Dr. Lian on 3/4/13. By report, moderate to

severe neuropathy at wrist/carpal tunnel syndrome, worse on left." Tr. 932. While Dr. Bash did make note of those test results, the fact remains that the actual EMG test results are not in the record. Nevertheless, plaintiff attaches to her reply brief a copy of the EMG report at issue. See Doc. #32-1. Plaintiff presents no argument why the Court should consider a document that is not in the administrative record. Additionally, the significance of the EMG report is not clear, given that: (1) it predates plaintiff's alleged onset date; (2) plaintiff was working at the time she was reportedly diagnosed with severe carpal tunnel syndrome; and (3) the results of that report are reflected in Dr. Bash's treatment notes, which were considered by the ALJ. See, e.g., Tr. 220, Tr. 756, Tr. 932, Tr. 935; see also Tr. 23 (ALJ opinion citing Exhibit 42F, which contains Dr. Bash's treatment records, and noting that Dr. Bash "assessed left CTS").

Additionally, substantial evidence supports the ALJ's determination that these conditions do not impose more than a minimal impairment on plaintiff's ability to engage in basic work-related activities for a period of at least 12 continuous months. The record contains scant evidence reflecting plaintiff's complaints of right wrist pain, all of which pre-date plaintiff's alleged onset date. See Tr. 337 (October 19, 2007, treatment record), Tr. 712 and Tr. 717 (June 6, 2013,

treatment records). Although records from 2013 reflect
plaintiff's reported "moderate to severe wrist/carpal tunnel
syndrome, worse on left[,]" Tr. 932, as noted above, plaintiff
continued to work a "vigorous job" at that time. Tr. 935.

A few records from the relevant time period do reflect some
abnormalities in plaintiff's hands and left wrist. See Tr. 908
(September 25, 2015, Physical Examination: "Patient has diffuse
joint swelling in her fingers with decreased range of motion."),
Tr. 921 (October 27, 2016, medical record: "Decreased sensation
to light touch in the hands bilaterally. She does have a
positive Tinel's at the left carpal tunnel."). However, a
consultative examination performed on January 16, 2016, found
plaintiff's "finger joints are normal[]" and "[f]inger to thumb
alternating hand motion grip strength and proximal strengths are
good." Tr. 548. On April 10, 2016, Dr. Bernstein's examination
of plaintiff indicated "sensory intact to touch and symmetric in
all four extremities, motor 5/5 bilateral upper ...
extremities." Tr. 895. Just prior to plaintiff's alleged onset
date, on December 5, 2014, a physical examination noted that
plaintiff's "wrist and fingers [were] intact." Tr. 447
Additionally, a disability examiner who met with plaintiff in
person on May 22, 2015, observed no difficulty in plaintiff's
use of her hands or writing. See Tr. 198-200. Thus, although the
record does contain some conflicting evidence regarding

plaintiff's hand and wrist impairments during the relevant time period, "[i]n our review, we defer to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012); accord Price v. Berryhill, 298 F. Supp. 3d 517, 527 (E.D.N.Y. 2018). Indeed, the question here is not whether substantial evidence supports plaintiff's position, but rather, whether substantial evidence supports the ALJ's conclusion. See Bonet, 523 F. App'x at 59.

Finally, on November 27, 2018, plaintiff filed a Notice of Supplemental Authority, attached to which is the ruling of Judge Michael P. Shea in the matter of Sullivan v. Berryhill, No. 17CV1524(MPS), slip op. at Doc. #26 (D. Conn. Nov. 26, 2018). See Doc. #33. Plaintiff asserts that Judge Shea's opinion, which found "the ALJ erred in not adequately addressing whether the claimant's neuropathy was a severe impairment at step two [and] failed to properly consider how the neuropathy affects functioning, ... renders direct precedent in support of her appeal." Id. at 1. The Court disagrees. As an initial matter, the ALJ in Sullivan "did not find – or even consider – Ms. Sullivan's neuropathy to be a severe impairment." Id. at 9. By contrast here, the ALJ explicitly considered plaintiff's alleged hand and wrist impairments at step two and found them to be non-severe. See Tr. 22-24. For reasons previously stated, that finding is supported by substantial evidence of record. Judge

Shea also rejected the Commissioner's argument in <u>Sullivan</u> that any error at step two was harmless because the ALJ there "did not adequately address Ms. Sullivan's neuropathy in other parts of the decision despite multiple references to neuropathy and related symptoms in her medical record." <u>Sullivan</u>, 17CV1524(MPS), slip op. Doc. #26 at 10. For reasons that will be discussed below, that error is not present here. Finally, from the Court's review of Judge Shea's opinion, the record in <u>Sullivan</u> contains far more compelling evidence of a severe and disabling impairment than the record in this case. Thus, Judge Shea's ruling in <u>Sullivan</u> does not support a finding of error at step two in this matter.[4]

Accordingly, for reasons previously stated, there is no reversible error and substantial evidence supports the ALJ's step two finding that plaintiff's hand and wrist impairments were not severe.

### 2. *Harmless Error Analysis*

Nevertheless, even if the ALJ had erred at step two, any such error would be harmless. If the ALJ finds <u>any</u> impairment is severe, "'the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" <u>Jones-Reid v. Astrue</u>, 934 F. Supp. 2d 381, 402

---

[4] The Court notes that Judge Shea's opinion, even if directly on point, would not be binding on this Court.

(D. Conn. 2012) (quoting Pompa v. Comm'r of Soc. Sec., 73 F.

App'x 801, 803 (6th Cir. 2003)), aff'd, 515 F. App'x 32 (2d Cir.

2013). "Under the regulations, once the ALJ determines that a

claimant has at least one severe impairment, the ALJ must

consider all impairments, severe and non-severe, in the

remaining steps." Pompa, 73 F. App'x at 803 (citing 20 C.F.R.

§404.1545(e)). Thus, as long as the ALJ considers all

impairments at later stages of the analysis, failure to find a

particular condition "severe" at step two, even if erroneous,

constitutes harmless error. See Reices-Colon v. Astrue, 523 F.

App'x 796, 798 (2d Cir. 2013) ("Because [non-severe] conditions

were considered during the subsequent steps, any error was

harmless."); Rivera v. Colvin, 592 F. App'x 32, 33 (2d Cir.

2015) ("[E]ven assuming that the ALJ erred at step two, this

error was harmless, as the ALJ considered both [claimant's]

severe and non-severe impairments as he worked through the later

steps.").

　　Here, the ALJ found plaintiff suffered from two severe

impairments and continued with the sequential evaluation after

step two. See Tr. 21-34. The ALJ also considered plaintiff's

alleged hand and wrist impairments at later steps of the

sequential evaluation. In making the RFC determination, the ALJ

stated that his determination was "based on all the evidence

with consideration of the limitations and restrictions imposed

by the combined effects of all the claimant's medically determinable impairments." Tr. 28. The ALJ made that statement after explicitly addressing the medical evidence related to plaintiff's alleged hand and wrist impairments at step two. See Tr. 22-24. Thereafter, the ALJ specifically referenced medical records which noted plaintiff's claimed hand and wrist impairments. See Tr. 29 (referencing Exhibit 12F (containing November 28, 2011, medical record reflecting plaintiff's electromyography results of mild left sided carpal tunnel syndrome, reflected at page 370 of the record)), Tr. 29 (referencing Exhibit 26F (containing November 28, 2011, electromyography results confirming diagnosis of carpal tunnel syndrome, reflected at page 629 of the record)), Tr. 30 (referencing Exhibit 30F (containing March 28, 2013, medical record reflecting plaintiff's complaints of hand swelling, reflected at page 756 of the record)), Tr. 30 (referencing Exhibit 39F (containing September 25, 2015, medical record reflecting plaintiff's "diffuse joint swelling in her fingers with decreased range of motion[]")), Tr. 31 (referencing plaintiff's October 27, 2016, orthopedic exam, reflected at page 921 of the administrative record). Accordingly, the ALJ did not

commit reversible error at step two of the sequential

evaluation.[5]

B.    Step Three

Plaintiff's argument at step three is twofold. First,

plaintiff contends that "she meets or equals listing 1.04, and

or listing 11.14, and should be found disabled at step 3." Doc.

#23-1 at 11.[6] Second, plaintiff asserts that the ALJ's

"conclusionary denial" at step three constitutes reversible

error. Id. at 12 (sic). Defendant responds that the ALJ's step

three findings are supported by substantial evidence and that

the ALJ's "decision amply demonstrates that Plaintiff's

impairments did not meet the Listings." Doc. #27-1 at 11-12.

At step three, the ALJ:

> [C]onsidered medical Listing 1.00 and has concluded that
> the claimant has not met the clinical requirements of
> these listings or any other listing contained in
> Appendix 1 to Subpart P of Social Security Regulations
> No. 4. Moreover, the claimant has not had medical
> findings of equal or greater clinical significance to
> the aforementioned listings or any other listing
> contained in Appendix 1.

---

[5] Plaintiff asserts that any error at step two would not be
harmless because the ALJ failed to incorporate manipulative
limitations in the RFC. See Doc. #23-1 at 10. The Court
construes plaintiff's argument as asserting that the RFC is not
supported by substantial evidence. The Court addresses that
argument, infra.

[6] In support of her argument that she meets listing 11.14,
plaintiff specifically cites to listing 11.14A. See Doc. #23-1
at 11. Accordingly, the Court considers only that subsection in
the following discussion.

Tr. 27. Plaintiff "bears the burden of proof" at step three of the sequential evaluation. <u>Talavera</u>, 697 F.3d at 151. "For a claimant to show that h[er] impairment matches a listing, it must meet <u>all</u> of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). Bearing that in mind, the Court turns first to a consideration of the specific listings that plaintiff contends her impairment(s) meet or medically equal.

> *1.  Listing 1.04A*

Listing 1.04 addresses disorders of the spine:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §1.04A.

In support of her argument that she meets this listing, plaintiff cites to various medical records and diagnostic imaging, the majority of which pre-date plaintiff's alleged onset date. <u>See</u> Doc. #23-1 at 12-13 n.5. In that regard, plaintiff contends: "This is not a case where the evidence of

listing level criteria is lacking. The issue appears to be not
if the plaintiff met a listing, but more so whether her listing
level condition persisted after her surgical fusion in 2013,
through the relevant period." Id. at 14. "[T]he mere absence of
contemporaneous medical evidence of a disabling condition during
the relevant time period does not necessarily preclude a finding
of disability." Norman v. Astrue, 912 F. Supp. 2d 33, 82 n.74.
(S.D.N.Y. 2012). Here, however, substantial evidence supports
the conclusion that plaintiff did not suffer from a disabling
condition(s) prior to her alleged onset date which then
continued through the relevant time period. Indeed, as
previously discussed, plaintiff worked a vigorous job at the
time plaintiff contends that she was totally disabled. That
plaintiff was able to maintain such employment contradicts a
finding of disability during the same period. Accordingly, the
record does not support a finding that that plaintiff suffered
from a continuous disabling condition(s) that would satisfy
listing 1.04A.

The evidence of record also does not support a finding that
plaintiff's condition(s) met or equaled listing 1.04A during the
relevant time period or leading thereto. "In order to
satisfy Listing 1.04A, plaintiff must demonstrate that she
suffers from nerve root compression and each of the four
characteristics set forth in the Listing during the relevant

time period, as an impairment that manifests only some of those criteria, no matter how severe, does not qualify." Elderkin v. Berryhill, No. 3:17CV90(JGM), 2018 WL 704137, at *10 (D. Conn. Feb. 5, 2018) (citation and internal quotation marks omitted); see also Loescher v. Berryhill, No. 16CV300(FPG), 2017 WL 1433338, at *4 (W.D.N.Y. Apr. 24, 2017) (To establish that claimant meets Listing 1.04 he "must demonstrate that he suffers from nerve root compression and each of the four characteristics set forth in the Listing during the relevant time period." (emphasis added)).

Leaving aside the other requirements of listing 1.04A, the record does not contain substantial evidence that plaintiff suffered from "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[]" during the relevant time period, or leading to the relevant time period. For example, in 2011, on physical examination plaintiff had normal reflexes, muscle tone, and motor skills, and no muscle atrophy. See Tr. 369; see also Tr. 385 (2011 physical exam indicating normal motor and sensory exam and intact reflexes); Tr. 637 (2011 neurological exam: "I find it to be normal of both upper extremities."). Similarly, during a physical examination in 2012, plaintiff had "5/5" motor and muscle strength in all extremities, and an "[i]ntact sensory exam[.]" Tr. 434. On physical examination in 2013, Dr. Lian

observed that plaintiff's "[m]otor, sensory, deep tendon reflexes, coordination and gait are normal." Tr. 552; see also Tr. 729, Tr. 764, Tr. 773 (2013 normal physical examinations); Tr. 712 (June 2013 physical examination: "Motor strength is 5/5 in all major muscle groups with bilateral comparison."). In 2014, plaintiff demonstrated normal reflexes and normal sensation on multiple examinations. See Tr. 457, Tr. 723. In 2015, a neurological exam noted plaintiff's normal reflexes and sensation to light touch, although plaintiff was observed to have "decreased strength in all extremities[.]" Tr. 499. During the consultative examiner's 2016 physical examination, plaintiff demonstrated "equal and symmetrical[]" reflexes, normal heel and toe standing, and "good" "[f]inger to thumb alternating hand motion grip strength and proximal strengths[.]" Tr. 548. On physical examination in April 2016, Dr. Bernstein observed that plaintiff was "intact sensory to touch and symmetric in all four extremities, motor 5/5 bilateral upper and lower extremities[.]" Tr. 895. Similarly, in October 2016, a physical examination revealed plaintiff's "[s]trength in the upper extremities is 5/5 to all major muscle groups." Tr. 921; see also Tr. 912 (May 2016 physical examination: "[D]eep tendon reflexes were 2+ and symmetric, the sensory exam was normal to light touch and strength normal."). Accordingly, substantial evidence supports a

finding that plaintiff's impairment(s) did not meet or medically equal listing 1.04A.

### 2. Listing 11.14A

Listing 11.14A governs "[p]eripheral neuropathy, characterized by ... Disorganization of motor function in two extremities (see 11.00D1), resulting in an <u>extreme limitation</u> (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §11.14A (emphasis added).[7] Plaintiff "claims that her impairment to the cervical spine meets listings 1.04 and 11.14. This is a viable, well supported claim." Doc. #23-1 at 12 (footnote omitted). Although plaintiff marshals evidence which purportedly satisfies listing 1.04, <u>see</u> Doc. #23-1 at 12 n.5, she points to no evidence to support her argument that her condition meets

---

[7] "Extreme limitation means the inability to ... use your upper extremities to independently initiate, sustain, and complete work-related activities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §11.00D.2. "Inability to use your upper extremities means that you have a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use your fingers; or not being able to use your hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling." <u>Id.</u> at §11.00D.2.c.

listing 11.14A. Notably, the requirements for those two listings do not overlap. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). The Court declines to fill the gaps of plaintiff's argument with respect to listing 11.14A and will not further address that issue, except to note that the evidence discussed supra, does not support a finding that plaintiff's condition(s) met, or medically equaled, listing 11.14A's requirement of an "extreme limitation" in plaintiff's ability to use her upper extremities.[8] Accordingly, the Court finds no reversible error on that point.

### 3. Step Three Rationale

Last, plaintiff contends that the ALJ failed to support his step three findings with any meaningful explanation or

---

[8] Nor does the evidence of record support a finding that plaintiff suffered an "extreme limitation" in her "ability to stand up from a seated position, balance while standing or walking[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §11.14A; see also id. at §11.00D.2.a. ("Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes."); id. at §11.00D.2.b. ("Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.").

rationale. <u>See</u> Doc. #23-1 at 13-14. "[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." <u>Berry v. Schweiker</u>, 675 F.2d 464, 468 (2d Cir. 1982) (<u>per</u> <u>curiam</u>). Here, "[a]lthough the ALJ did not explicitly discuss Listing 11.14 [or 1.04], his general conclusion (that [plaintiff] did not meet a listed impairment) is supported by substantial evidence." <u>Solis v. Berryhill</u>, 692 F. App'x 46, 48 (2d Cir. 2017) (summary order). The ALJ comprehensively summarized the evidence of record both before and after step three of his decision. <u>See</u> Tr. 22-23. That evidence supports the ALJ's finding that plaintiff's impairment(s) did not meet or medically equal a listed impairment. Indeed, throughout his decision, the ALJ specifically noted evidence reflecting that in plaintiff's physical exams she demonstrated full strength, intact sensation, and normal reflexes, both before and after the alleged onset date. <u>See</u> Tr. 22-24, 29-30; <u>see also</u> <u>Ryan v. Astrue</u>, 5 F. Supp. 3d 493, 507-08 (S.D.N.Y. 2014) ("An ALJ's unexplained conclusion [at] step three of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence.").

Because substantial evidence supports the ALJ's findings that plaintiff did not meet a listed impairment, remanding this case so that the ALJ could set forth specific reasons for his step three findings would be a futile exercise. See Morgan Stanley Capital Grp., Inc. v. Pub. Util. Dist. No. 1, 554 U.S. 527, 545 (2008) (noting that where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game" (quotation omitted)). Accordingly, there is no reversible error at step three.[9]

C.   Treating Physician Rule

Plaintiff next argues that the ALJ failed to properly evaluate opinion evidence from plaintiff's treating provider. See Doc. #23-1 at 14. Plaintiff specifically takes issue with the weight afforded to the October 14, 2015, medical source statement authored by Candace Treadway, PAC. See id. at 16-19.

---

[9] Judge Shea's ruling in Sullivan found that the ALJ erred at step three because he "did not mention, let alone evaluate, the applicability of listing 11.14 (peripheral neuropathy) in his decision." Sullivan, 17CV1524(MPS), slip op. Doc. #26 at 10. Judge Shea rejected the Commissioner's argument that "Ms. Sullivan presents no evidence demonstrating the requirements of any listing actually were satisfied[,]" because Ms. Sullivan's "medical records suggest that her physical impairments could conceivably meet the criteria for listing 11.14." Id. at 11 (internal citation marks omitted). Unlike the record in Sullivan, the record here does not suggest that plaintiff's physical impairments could conceivably meet the criteria of listing 11.14A.

Defendant responds that the ALJ's decision to afford Ms. Treadway's opinion limited weight is supported by substantial evidence. See Doc. #27-1 at 12-14.

> "The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §404.1527(c). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §404.1527(c)(2).

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the treating source. See 20 C.F.R. §§404.1527(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4 (S.S.A. Aug.

9, 2006). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

After summarizing the findings of Ms. Treadway's 2015 opinion, the ALJ stated:

> Ms. Treadway opined the claimant had these limitations since 2012 but her disability was a gradual decline to the point of her inability to work safely and effectively. Ms. Treadway's opinion in Exhibit 40F that the claimant was unable to work since 2012 is not consistent with the claimant working until 2015 or Ms. Treadway's finding in Exhibit 30F from May of 2014 that the claimant could work an 8-hour workday at her medium exertion job. Further there is not sufficient evidence to support the very restrictive opinion, as examinations were generally unremarkable. The opinion is incongruent with examination findings that were benign. Therefore, Ms. Treadway's opinion in Exhibit 40F is given limited weight.

Tr. 32.

Plaintiff first contends that the above discussion is "very limited in scope[]" and "makes no reference to the regulatory factors." Doc. #23-1 at 19 (citation omitted). Defendant accurately responds that an ALJ need not discuss every regulatory factor provided that the ALJ's reasoning and adherence to the regulation is clear. See Doc. #27-1 at 12; see also Atwater, 512 F. App'x at 70.

Of the six regulatory factors, the ALJ expressly considered two of those six factors: relevant evidence used to support the opinion and the consistency of the opinion with the entire record. See Tr. 32. From the rest of the ALJ's decision, and because therein he explicitly referenced and summarized Ms. Treadway's treatment records, it is also apparent that the ALJ considered the remaining four factors -- length of treatment relationship, frequency of examination, the nature and extent of the treatment relationship, and the expertise and specialized knowledge of the source -- when weighing Ms. Treadway's opinion. At step two, the ALJ summarized medical records from Marlborough Family Practice dated May 6, 2014, to May 4, 2016, where Ms. Treadway, a physician's assistant, provided services to plaintiff. See Tr. 24 (citing Exhibits 16F (Tr. 442-75), 18F (Tr. 498-505), 30F (Tr. 722-806), and 39F (Tr. 904-14)). The ALJ additionally considered records from Marlborough Family Practice dated July 12, 2006, to December 30, 2011. See Tr. 29 (citing Exhibits 5F (Tr. 330-41), 13F (Tr. 377-431), and 26F (Tr. 592-704)). The records considered and cited by the ALJ collectively demonstrate the length of Ms. Treadway's treatment relationship with plaintiff, the frequency with which she examined plaintiff, the general nature and extent of the treatment relationship between Ms. Treadway and plaintiff, and Ms. Treadway's expertise and specialized knowledge. In that regard, the exhibits cited

and summarized by the ALJ contain no less than 22 substantive treatment records authored by Ms. Treadway, which span the time period of October 24, 2011, see Tr. 380-82, to May 4, 2016, see Tr. 911-14.[10] Accordingly, the Court can glean from the ALJ's decision that he considered the regulatory factors when weighing Ms. Treadway's 2015 opinion. See, e.g., Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) ("[R]emand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's decision[.]'" (quoting Mongeur v. Heckler, 722 F.2d 1033,

---

[10] See also Tr. 442-44 (treatment record authored by Ms. Treadway dated February 18, 2015); Tr. 446-48 (treatment record authored by Ms. Treadway dated December 5, 2014); Tr. 450-52 (treatment record authored by Ms. Treadway dated October 17, 2014); Tr. 453-55 (treatment record authored by Ms. Treadway dated September 23, 2014); Tr. 456-62 (treatment record authored by Ms. Treadway dated August 14, 2014); Tr. 498-501 (treatment record authored by Ms. Treadway dated September 25, 2015); Tr. 722-24 (treatment record authored by Ms. Treadway dated May 6, 2014); Tr. 725-27 (treatment note authored by Ms. Treadway dated October 30, 2013); Tr. 728-31 (treatment note authored by Ms. Treadway dated September 10, 2013); Tr. 738-40 (treatment note authored by Ms. Treadway dated August 5, 2013); Tr. 742-44 (treatment note authored by Ms. Treadway dated May 30, 2013); Tr. 750-53 (treatment note authored by Ms. Treadway dated April 4, 2013); Tr. 756-58 (treatment note authored by Ms. Treadway dated March 28, 2013); Tr. 759-61 (treatment note authored by Ms. Treadway dated September 13, 2013); Tr. 762-64 (treatment note authored by Ms. Treadway dated February 7, 2013); Tr. 766-68 (treatment note authored by Ms. Treadway dated January 24, 2013); Tr. 771-73 (treatment note authored by Ms. Treadway dated January 10, 2013); Tr. 911-14 (treatment note authored by Ms. Treadway dated May 4, 2016); Tr. 380-82 (treatment note authored by Ms. Treadway dated November 22, 2011); Tr. 388-90 (treatment note authored by Ms. Treadway dated October 28, 2011); Tr. 391-93 (treatment note authored by Ms. Treadway dated October 24, 2011).

1040 (2d Cir. 1983))); Daniel v. Berryhill, No.
3:17CV01015(SALM), 2018 WL 2128380, at *6 (D. Conn. May 9, 2018)
(finding that the ALJ implicitly considered a treating
physician's relationship with plaintiff where the ALJ
"explicitly considered [the physician's] treatment notes
throughout his decision[]").

Plaintiff next asserts that the ALJ's "analysis also fails
to make any reference to any specific medical evidence within
the record. The ALJ states that there is 'not sufficient
evidence' to support the opinions and that examinations were
'generally unremarkable.' These are mere conclusions." Doc. #23-
1 at 19. That statement necessarily ignores the preceding ten
pages of the ALJ's decision which summarized the evidence of
record contradicting the conclusions set forth in Ms. Treadway's
opinion. See Tr. 22-31. For example, Ms. Treadway opined that,
since 2012,[11] plaintiff could never use foot controls or her
hands due to "weakness, numbness[.]" Tr. 915, Tr. 917. That
finding contradicts other evidence of record, including Ms.
Treadway's own examinations from 2012 through 2016 which
reflected normal reflexes and sensation, Tr. 457, Tr. 499, Tr.
723, Tr. 729, Tr. 764, Tr. 773, Tr. 912, normal motor exams, Tr.
742, Tr. 764, Tr. 773, and normal muscle strength, Tr. 758, Tr.

---

[11] Ms. Treadway's opinion states that the limitations assessed
therein were first present in 2012. See Tr. 920.

773, Tr. 912. Records from other providers during that time period reflect similar findings and also undermine Ms. Treadway's restrictive opinion. See Tr. 434, Tr. 548, Tr. 552, Tr. 895, Tr. 921.

Further supporting the ALJ's decision to afford limited weight to Ms. Treadway's opinion, and as noted by the ALJ in his decision, is that plaintiff was working a vigorous job during the time to which Ms. Treadway's opinion relates, i.e., 2012. See Tr. 32; Tr. 220 (work history report); Tr. 756 and Tr. 935 (2013 medical records reporting that plaintiff was then working); Tr. 529 (treatment record dated August 19, 2014: Plaintiff "is back at work[.]"). Indeed, on May 6, 2014, Ms. Treadway herself opined: "This patient may remain in work with the following restrictions: Patient should only be working 8 hour shifts unless she is able to tolerate longer hours." Tr. 770. Plaintiff asserts that the ALJ's reliance on plaintiff's work history to discount Ms. Treadway's opinion was erroneous because the ALJ "ignor[ed] that Ms. Treadway added an explanatory note indicating that the restrictions were getting worse over time since 2012, which is in fact what transpired." Doc. #23-1 at 19 n.8. To the contrary, the ALJ quoted verbatim that exact portion of Ms. Treadway's opinion: "Ms. Treadway opined that the claimant had these limitations since 2012 but her disability was a gradual decline to the point of her

inability to work safely and effectively." Tr. 32; see also Tr.
920 (Ms. Treadway's opinion). Thus, plaintiff's argument on that
point lacks merit.

Accordingly, the Court finds that the ALJ provided good
reasons for discounting Ms. Treadway's opinion, and that his
decision to afford her opinion limited weight is supported by
substantial evidence of record. See, e.g., Halloran, 362 F.3d at
32.[12]

D.   RFC Determination

Related to her step two argument, plaintiff asserts that
she "suffers from bilateral neuropathy moderate to severe at the
wrist, worse on the left" which "impacts the ability to use the
hands to perform fine and gross manipulation, including
fingering, feeling, and handling." Doc. #23-1 at 9. As a result,
plaintiff contends that the ALJ's failure to designate those
impairments as severe is not "harmless" because "the ability to
use the hands bilaterally for fine and gross manipulation is an
essential component of work at the light level of exertion." Id.

---

[12] Indeed, and without addressing the potential impact of the co-
signature on her opinion, because Ms. Treadway, a physician's
assistant, is not an "acceptable medical source," her opinion
generally would not be entitled to controlling weight. See
Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008)
("[P]hysicians' assistants are defined as 'other sources' whose
opinions may be considered with respect to the severity of the
claimant's impairment and ability to work, but need not be
assigned controlling weight." (internal citation omitted)).

at 10. The Court construes that argument as asserting that the ALJ's RFC determination is not supported by substantial evidence. Defendant responds that "substantial evidence supports the ALJ's conclusion that Plaintiff had no such limitation[]" in her fine and gross manipulation. Doc. #27-1 at 8.

Plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §404.1527(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1527(a)(1), (3).

For reasons previously stated, substantial evidence supports the ALJ's conclusion not to assign manipulative limitations based on plaintiff's alleged hand and wrist impairments. See Section V.A., supra (discussing evidence of record supporting the ALJ's decision that those impairments were not severe). Further supporting the ALJ's decision not to assign manipulative limitations are the opinions of the state agency reviewing consultants. At both the initial and the reconsideration levels, the consultants opined that plaintiff had no limitations in her gross and fine manipulative abilities. See Tr. 99, Tr. 114. Those opinions are supported by the evidence of record as previously discussed.

Accordingly, the ALJ's decision not to assign manipulative limitations in the RFC is supported by substantial evidence of record.[13]

## VI.  CONCLUSION

For the reasons stated, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #27**] is **GRANTED**, and plaintiff's Motion for Order Reversing the Decision of the Commissioner and/or Remanding the Matter for Further Proceedings [**Doc. #23**] is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 3rd day of December, 2018.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

---

[13] In a footnote, plaintiff presents the undeveloped argument that "[u]pon information and belief, all of the positions identified by the Vocational Expert, and found suitable for the plaintiff to perform, require good use of the hands bilaterally." Doc. #23-1 at 10 n.3. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflects the limitations and capabilities of the claimant involved." McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (internal citation and quotation marks omitted); see also Mancuso v. Astrue, 361 F. App'x 176, 179 (2d Cir. 2010) (upholding an ALJ's hypothetical where "the ALJ's hypothetical mirrored [plaintiff's] RFC, which ... was supported by substantial evidence in the record[]"). Here, the ALJ presented the VE with a hypothetical which tracked the ultimate RFC determination. See Tr. 85-87. As previously stated, the ALJ properly weighed and considered the evidence of record, and the RFC determination is supported by substantial evidence. Accordingly, the ALJ appropriately relied on the VE's testimony at step five of the sequential evaluation, and there is no error.